IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| CHAD HILL and MISTY HILL, | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:21-CV-274-M-BQ |
| CHESTER WHITE RECORD ASSOCIATION and CERTIFIED PEDIGREED SWINE, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Prior to Defendants Chester White Record Association (CWRA) and Certified Pedigreed Swine (CPS) removing the case to federal court, Plaintiffs Chad and Misty Hill secured a temporary restraining order (TRO) in state district court. Under Texas state law, the TRO expires Monday, November 22, 2021, at midnight.[1] Plaintiffs now seek to extend the TRO (ECF No. 6), while Defendants ask the Court to dissolve it. ECF No. 7.[2] Finding Plaintiffs have not demonstrated good cause for an extension, the undersigned recommends that the district judge **DENY** their motion. Further, the undersigned recommends the district judge **GRANT**

---

[1] The original TRO, though signed on November 5, 2021, states by its terms it "shall not be effective until Plaintiffs deposit[] with the Clerk[] a bond in the amount of $1000.00 in conformity with the law." Ex. C, at 2. Plaintiffs deposited the funds on November 8, 2021. *Id.* at 4. Under Texas Rules of Civil Procedure 684 and 688, the state court's TRO was not "issued," and therefore effective, until Plaintiffs paid the bond. Therefore, the TRO, if indeed it is not void, does not expire until November 22 at 11:59 p.m. *See, e.g., In re Guardianship of Chang*, No. 14-20-00115-CV, 2021 WL 4617929, at *3–4 (Tex. App.—Houston [14th Dist.] Oct. 7, 2021, no pet. h.) (concluding that TRO was not enforceable until party paid bond); *Ohlhausen v. Thompson*, 704 S.W.2d 434, 438 (Tex. App.—Houston [14th Dist.] 1986, no writ) (interpreting Rule 684 as it applies to both TROs and temporary injunctions).

[2] Pursuant to a Standing Order of Reference, United States Chief District Judge Barbara M. G. Lynn referred this case to the undersigned United States Magistrate Judge for pretrial management. ECF No. 5. Chief Judge Lynn also specifically referred the motions addressed herein for a hearing, if necessary, and recommendation. ECF No. 9.

Defendants' Motion to Dissolve because (1) the TRO is void, and (2) Plaintiffs have not sufficiently established at least two of the four requisite elements for obtaining a TRO.

## I. Background

At 5:01 p.m. on November 5, 2021, Plaintiffs filed their Original Petition, Application for TRO, Temporary Injunction, and Permanent Injunction in the 237th Judicial District Court of Lubbock County, Texas. Pls.' Original Pet. 1, Ex. B, ECF No. 1-2 [hereinafter Pls.' Pet.]. Plaintiffs "operate a [Chester White hog] boar stud in Lubbock County, Texas, meaning that they house boars and sell semen from those boars for producers to use to breed sows using artificial insemination." *Id.* at 2 ¶ 10. Plaintiffs are members of Defendant CWRA, "the breed registry for Chester White hogs." *Id.* at 2 ¶ 9. Defendant "CPS serves as administrative partner and manager of CWRA and three other purebred swine registries." *Id.* Plaintiffs allege that on September 20, 2021, Defendants denied them an artificial insemination certificate, which is required to register litters with CWRA, on the basis that their boar, 0 Hill Big Hit 8-5 (Boar), had tested positive as a carrier of the porcine stress gene (stress gene). *Id.* at 3–4. Plaintiffs aver that due to the certificate's denial, breeders cannot register litters sired by their Boar. *See id.* at 7.

According to Plaintiffs, CWRA invalidly amended its bylaws regarding the stress gene, inconsistently applied the requirement that boars test negative, and/or failed to notify Plaintiffs of the requirement that registered boars test negative. *Id.* at 4–8, 10–11. Plaintiffs assert a claim for negligence and seek monetary damages, injunctive relief, and a declaratory judgment. *Id.* at 1, 10–14.

The same day Plaintiffs filed their Petition, the state district court entered a TRO at 6:30 p.m., without notice to Defendants. Ex. C, ECF No. 1-3. The TRO orders Defendants to immediately stop:

    a. Denying the issuance of Artificial Insemination Certificates for Chester White boar 0 Hill Big Hit 8-5 (Reg. No. 156487005) based on that boar being a carrier of the porcine stress gene; and

    b. Denying the issuance of registration papers for pigs and/or litters sired by 0 Hill Big Hit 8-5 (Reg. No. 156487005) based on that boar being a carrier of the porcine stress gene.

*Id.* at 1. The TRO further set a preliminary injunction hearing on November 19, 2021, at 10:00 a.m. *Id.*

Defendants removed the case to this Court on November 12, 2021. ECF No. 1. Plaintiffs then filed a Motion to Extend Temporary Restraining Order (ECF No. 6), and the same day, Defendants filed a Motion to Dissolve the TRO. ECF No. 7. The parties filed their respective responses (ECF Nos. 8, 14), and on November 18, 2021, the undersigned conducted a telephonic hearing as to both motions.

### A. Plaintiffs' Motion to Extend TRO

In their Motion to Extend, Plaintiffs argue that their local counsel is unavailable for a preliminary injunction hearing as scheduled in the state court, and lead counsel is not licensed in this district. Pl.'s Mot. 1, ECF No. 6. They therefore ask the Court "to extend the TRO for an additional 14 days" so that "qualified counsel [is] available to represent them in this proceeding." *Id.* at 2. In addition, Plaintiffs note that they are seeking remand of this action to the state district court.[3] *Id.* at 2–3.

Defendants counter that an attorney's unavailability is not a sufficient basis to extend the TRO. Defs.' Resp. 1–2, ECF No. 8. Defendants further cite to their Motion to Dissolve for reasons

---

[3] On November 17, 2021, Plaintiffs filed a Motion to Remand. ECF No. 13.

3

why the Court should not only decline to extend the TRO but also dissolve it immediately. *Id.* at 1–3.

### B. Defendants' Motion to Dissolve TRO

Defendants advance several arguments in support of their request to dissolve the TRO. First, Defendants observe that the TRO does not comply with Rule 680 of the Texas Rules of Civil Procedure. Defs.' Mot. 6, ECF No. 7. Further, Defendants assert that "Plaintiffs did not, and cannot, meet their burden to demonstrate all four [required]" elements to obtain a TRO. *Id.* at 8. Specifically, Defendants contend that: (1) Plaintiffs cannot demonstrate a likelihood of success on the merits; (2) Plaintiffs have not shown a threat of irreparable injury; (3) the TRO's harm on Defendants outweighs any harm Plaintiffs might suffer without such relief; and (4) the TRO does not further the public interest. *Id.* at 8–18.

As to the first factor, Defendants aver that Plaintiffs are not only charged with knowledge of the CWRA's bylaws by virtue of their membership, but they also had actual notice of the requirement that all sires must test negative for the stress gene.[4] *Id.* at 8–10. In support, Defendants attach several documents, including board minutes, CWRA bylaws, affidavits of other breeders, a CWRA Chester White registration certificate, etc. *Id.*; ECF Nos. 7-2, 7-7, 7-8, 7-9, 7-14, 7-16, 7-20, 7-21. Further, Defendants, citing many of the same exhibits, dispute Plaintiffs' contention that Defendants have not consistently enforced the stress carrier prohibition. Defs.' Mot. 10–14; ECF Nos. 7-2, 7-7, 7-8, 7-9, 7-10, 7-11, 7-17, 7-18. Thus, Defendants claim that Plaintiffs have failed to demonstrate that Defendants were negligent in applying CWRA's rule against registering stress carriers. *Id.* at 14.

---

[4] Plaintiffs allege, and Defendants do not appear to contest, that Illinois law applies to their cause of action because Defendants are Illinois corporations. Pls.' Pet. 11–12; Defs.' Mot. 8 n.2. At the hearing, Defendants conceded that Illinois law likely controls. Because the parties have not made choice of law an issue before the Court, or offered a reason to conclude otherwise, the Court will refer to Illinois law where applicable.

Turning to the second factor, Defendants maintain that Plaintiffs' only potential injury is economic, which does not constitute irreparable harm. *Id.* at 14–15. Moreover, "[t]he TRO did not maintain the status quo [of permitting stress carriers]" but instead "stood the status quo on its head." *Id.* at 15. Similarly, Defendants allege that factor three counsels in favor of dissolving the TRO because the harm inflicted by the TRO outweighs any harm Plaintiffs might suffer. *Id.* at 16.

Finally, Defendants aver that the TRO does not further the public interest. Defendants argue "[t]here is a strong public interest in an organization's ability to govern itself within its rules and bylaws and use its business judgment to make organizational decisions without judicial interference in its decision making." *Id.* Citing Illinois law, Defendants allege the public interest is disserved by substituting the Court's judgment for their own. *Id.* at 17.

In response, Plaintiffs focus on their contention they "did not have fair notice of the provisions of the bylaws that Defendants are attempting to" enforce. Pls.' Resp. 1, ECF No. 14. Plaintiffs maintain that due to the lack of notice, they stand to suffer irreparable harm if the stress gene requirement is enforced. *Id.*

Turning to the four required TRO factors, Plaintiffs initially assert that they did not have, and could not have had, notice of the bylaws in dispute. *Id.* at 2–3, 5–7. Plaintiffs cite several Illinois state cases for the proposition that where an association fails to comply with its own internal rules or violates a member's right to a fair hearing, courts may intervene. *Id.* at 3–4. Plaintiffs argue that because their economic livelihood is at stake, "Illinois jurisprudence gives the Court the power and duty to" intervene. *Id.* at 4.

Next, Plaintiffs claim they will be irreparably harmed, with no adequate remedy at law, if the Court dissolves the TRO. *Id.* at 8. Plaintiffs list several examples of the irreparable harm they believe they will suffer, including (1) their Boar's semen will be unmarketable, (2) they will face potential liability from customers, and (3) their customers will not be able to obtain registration

5

papers for the offspring of the Boar. *Id.* Further, Plaintiffs contend that without the TRO, "offspring of the Boar that have been sold to Texas junior livestock exhibitors . . . [will not be] registered and transferred to those exhibitors by December 1, 2021, [and] those youth exhibitors will not be allowed to show their pigs at those shows." *Id.* They also maintain the status quo is the 1984 version of the CWRA bylaws because more recent efforts to amend were invalid. *Id.* at 8–9.

In addition, Plaintiffs allege that Defendants will not be harmed by the TRO, and in fact will economically benefit from the collection of fees related to issuing certificates and registrations. *Id.* at 9. As to Defendants' argument that the TRO "undoes nearly two decades of progress toward" eliminating the stress gene from registered Chester Whites, Plaintiff notes that because Defendants only test boars for the gene, it will continue to proliferate through sows. *Id.* at 9–10.

Finally, Plaintiffs aver that the TRO serves an important public interest by protecting the aforementioned "Texas junior livestock exhibitors" who "have purchased progeny from the Boar with the expectation that they will be able to exhibit those pigs." *Id.* at 11.

## II. Legal Standards

### A. Rule 65 Standard for Issuing a TRO

Injunctive relief "is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). TROs and preliminary injunctions are "extraordinary and drastic remed[ies], not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *see Miss. Power & Light Co. v. United Gas Pipe Line*

*Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (explaining that "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule").

To obtain a TRO, the movant must establish entitlement to a preliminary injunction. *Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). That is because "[a] TRO is a highly accelerated and temporary form of preliminary injunctive relief." *Bar J-B Co. v. Tex. Dep't of Transp.*, No. 3:18-cv-0576-M, 2018 WL 2971138, at *1 (N.D. Tex. Mar. 13, 2018) (internal quotation marks and citation omitted); *Hassani*, 2009 WL 2044596, at *1. To successfully obtain a TRO or preliminary injunction, the movant must demonstrate:

1. A substantial likelihood of success on the merits of his or her case;
2. A substantial threat of irreparable injury if the injunction is not granted;
3. The threatened injury to the movant outweighs any damage the injunction will cause the non-movant; and
4. The injunction will not have an adverse effect on the public interest.

*Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418–20 (5th Cir. 2001); *Champion Nat'l Sec., Inc. v. A&A Sec. Grp., LLC*, No. 3:21-CV-00528-M, 2021 WL 1400979, at *3 (N.D. Tex. Apr. 13, 2021). If the movant fails to satisfy any of the four elements, the court cannot grant the TRO or preliminary injunction. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (providing that "if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue"); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

### B. Rule 65(b)(2) Motion to Extend

A court may extend a TRO "for good cause." Fed. R. Civ. P. 65(b)(2). There is little case law in this and other circuits as to what constitutes good cause. *See Costa v. Bazron*, No. 19-3185 (RDM), 2020 WL 2410502, at *2 (D.D.C. May 11, 2020) (quoting 11A Charles Alan Wright et

al., *Federal Practice and Procedure* § 2953 (3d ed. 2021)). But "[c]ourts have found good cause to extend TROs, for example, where the court needed time to fully consider the various arguments and motions of the parties; where the moving party needed additional time to prepare and present its preliminary injunction, despite diligent efforts; and where the moving party was continuing to attempt to serve the defendants and obtain more information about the case." *S.E.C. v. AriseBank*, No. 3:18-cv-186-M, 2018 WL 10419828, at *1 (N.D. Tex. Mar. 9, 2018) (internal quotation marks and citations omitted). Where the movant demonstrates "that the grounds for originally granting the temporary restraining order continue to exist," courts have also found good cause. Wright et al., *supra*, at § 2953; *see Xtria, LLC v. Int'l Ins. All., Inc.*, No. 3:09-CV-2228-G, 2009 WL 4756365, at *5 (N.D. Tex. Dec. 11, 2009) (observing that in considering plaintiff's motion to extend a TRO entered by a state court prior to removal, the court was not charged with determining "whether the TRO originally should have issued" but whether good cause existed for extension); *RA Glob. Servs., Inc. v. Apps*, No. 3:07-CV-1562-L, 2007 WL 9717686, at *1 (N.D. Tex. Sept. 20, 2007) (finding good cause where the circumstances supporting the state court's grant of a TRO had not changed so as to justify a refusal to extend).

### C. Rule 65(b)(4) Motion to Dissolve

Rule 65(b)(4) of the Federal Rules of Civil Procedure provides that the adverse party to a TRO "may appear and move to dissolve or modify the order" with "2 days' notice to the party who obtained the [TRO] without notice." A court may dissolve an improperly-issued TRO where, for example, "the party who obtained it did not show a substantial likelihood of success on the merits, if the TRO was not issued in accordance with applicable procedural law," or for any other procedural defect. *Myers v. Frontier PMS*, No. 4:21-cv-436-ALM-KPJ, 2021 WL 2906065, at *6 (E.D. Tex. June 15, 2021), *R. & R. adopted by* 2021 WL 2894096 (E.D. Tex. July 9, 2021); *see Dixie Brewing Co. v. Dep't of Veterans Affs.*, No. 13–6605, 2013 WL 6715921, at *3 (E.D. La.

Dec. 18, 2013) ("The motion to dissolve is treated like a motion for reconsideration, and should be granted where the temporary restraining order was improperly issued.").

### III. Analysis

**A. Plaintiffs' Motion to Extend should be denied.**

The primary basis Plaintiffs present for extending the TRO in this action is that their counsel is unavailable, or unable, to attend any preliminary injunction hearing, should the Court proceed with the date and time originally set by the state court—i.e., November 19, 2021. Pls.' Mot. 1–2. This is not a sufficient basis for extending the TRO, particularly where it was issued without notice. *See* Fed. R. Civ. P. 65(c)(3) (stating that if party who obtained TRO without notice does not proceed with hearing on preliminary injunction, "the court must dissolve the order").

Plaintiffs also assert that the Court should extend the TRO while its Motion to Remand is pending. Pls.' Mot. 2–3. Through their motion, Plaintiffs seek remand on the basis that the Court lacks diversity jurisdiction because the amount in controversy does not exceed $75,000.00. Pls.' Mot. to Abstain and to Remand 1, ECF No. 13. It seems inconsistent, however, for a party to cite a Court's purported lack of jurisdiction as a basis for that Court to extend an order proscribing conduct by another party. Conversely, in a scenario where a defendant improvidently removed a case and potentially jeopardized a pending state TRO, the Court could see justification for maintaining the status quo pending resolution of the remand question.

Fortunately, the Court need not resolve that question because a more significant factor controls. Plaintiffs' Motion to Extend should be denied because, as discussed in detail below, the

TRO is not valid and Plaintiffs have not demonstrated they have met all the requisite elements for issuance of a TRO.[5]

### B. Defendants' Motion to Dissolve should be granted because the TRO was not validly issued, and Plaintiffs have not demonstrated they are entitled to such extraordinary relief.

The undersigned finds there are at least three reasons to dissolve the TRO: (1) it was not validly issued; (2) Plaintiffs have not demonstrated they will suffer any irreparable injury in the absence of a TRO; and (3) Plaintiffs have not shown that their threatened injury outweighs any harm to Defendants. The Court addresses each in turn.

*1. The TRO was not validly issued in state district court.*

Rule 680 of the Texas Rules of Civil Procedure provides in relevant part as follows:

> Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after signing, not to exceed fourteen days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.

The TRO at issue here is deficient in several ways. First, it does not "define the injury and state why it is irreparable." *Id.*; *see* Ex. C, at 1. Instead, the TRO makes the conclusory statement that "[b]ased upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing," Plaintiffs demonstrated they "will suffer irreparable harm." *Id.* This finding is not specific enough to satisfy Rule 680. *See In re Off. of Atty. Gen.*, 257 S.W.3d 695, 697 (Tex. 2008) (per curiam); *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 747 (Tex. App.—Dallas 2011, no pet.) (holding a TRO order that "simply recite[d] the conclusory statement that [plaintiff] ha[d]

---

[5] This provides an additional basis for the Court concluding it needs no additional time to further consider "the various arguments and motions of the parties," including Plaintiffs' motion to remand. *See AriseBank*, 2018 WL 10419828, at *1.

shown that it will suffer an irreparable injury for which it has no other adequate legal remedy" did not satisfy the standard for a preliminary injunction). Second, it does not contain an expiration date. Ex. C, at 1–2; *In re Off. of Atty. Gen.*, 257 S.W.3d at 697 (observing that Rule 680 requires the state court issuing a TRO to, inter alia, "state the date the order expires").

Finally, as Defendants observe, the TRO does not explain why it was granted without notice to Defendants. Defs.' Mot. 6 n.1; *see* Ex. C, at 1–2. An *ex parte* TRO must explain why the judge is granting it without notice. Tex. R. Civ. P. 680; *Hall v. BAC Home Loans Servicing, L.P.*, 541 F. App'x 430, 432 (5th Cir. 2013) (per curiam) (finding a TRO was invalid under Rule 680 where it "failed to state why it was granted without notice" to defendant); *In re Off. of Atty. Gen.*, 257 S.W.3d at 697. In their Petition and attachments, Plaintiffs do not provide specific facts demonstrating that they would suffer irreparable injury prior to Defendants receiving notice and an opportunity to be heard on the TRO application. Pls.' Pet. 11–14. To the contrary, Plaintiffs' allegation that December 1, 2021, is the deadline to register pigs indicates that at the time of their TRO application, Plaintiffs had almost one month before they would purportedly suffer harm. *Id.* at 13–14 (asserting that Plaintiffs will suffer "immediate and irreparable loss and damage . . . before the Defendants or their counsel can be heard in opposition" but also stating harm "is imminent because of the approaching deadline of December 1").

For these reasons, the TRO is void under Texas law. *Hall*, 541 F. App'x at 432–33; *In re Off. of Atty. Gen.*, 257 S.W.3d at 697; *In re Elevacity, LLC*, No. 05–18–00135–CV, 2018 WL 915031, at *2 (Tex. App.—Dallas Feb. 16, 2018, no pet.) (stating that TRO was "void because it [did] not define the injury it is designed to prevent, [did] not explain why such injury would be irreparable, and [was] not specific in its terms," and further observing that a general statement as to irreparable injury, without explanation, is insufficient to satisfy Rule 680). The invalidity of the TRO supports a denial of Plaintiffs' Motion to Extend. But even if the Court were to modify the

TRO to remedy these defects or to otherwise consider issuing a new TRO (or preliminary injunction) under the federal rules, the undersigned finds Plaintiffs' failure to demonstrate at least two of the required elements is fatal. *Consol. Rest. Operations, Inc. v. Nat'l Processing Co., LLC*, No. 3:02CV1278G, 2002 WL 1432469, at *6 (N.D. Tex. June 28, 2002) (expressing doubt as to whether plaintiff properly obtained an *ex parte* TRO in state court but explaining that, in any event, plaintiff's "failure to make the showing required for the grant of injunctive relief" required the court to dissolve the TRO).

　　*2. Plaintiffs have not demonstrated they will suffer irreparable harm.*

In their Response, Plaintiffs primarily allege irreparable harm in that (1) the Boar's semen and/or litters will be unmarketable, (2) they will face potential liability from customers, and (3) their customers will not be able to obtain registration papers for the offspring of the Boar. Pls.' Resp. 8. Plaintiffs further contend that without the TRO, "offspring of the Boar that have been sold to Texas junior livestock exhibitors . . . [will not be] registered and transferred to those exhibitors by December 1, 2021, [and] those youth exhibitors will not be allowed to show their pigs at those shows." *Id.*

All the foregoing harm, however, can be remedied through an award of money damages, thus prohibiting an award of injunctive relief.[6] *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) (providing that to show irreparable injury, a plaintiff must show, inter alia, "that money damages would not fully repair the harm"); *OSR Pat. LLC v. Siragusa*, No. 4:18-cv-774-ALM-KPJ, 2018 WL 10436624, at *3 (E.D. Tex. Nov. 21, 2018)

---

[6] Plaintiffs' allegation that youth exhibitors and customers' inability to register or show their pigs, as a basis for obtaining injunctive relief, is misplaced. Plaintiffs cannot bring a cause of action on behalf of others and, similarly, any harm to non-parties cannot validly support a finding that *Plaintiffs* will suffer irreparable harm. *Cf. Bradley Porras Wolff, LLC v. Snaith*, No. 3:15-CV-2110-B, 2015 WL 13118145, at *1 (N.D. Tex. June 24, 2015) (observing that plaintiff's TRO request did not clarify "how [p]laintiff would suffer an injury if the relief requested were not granted; instead, it briefly asserts, without elaborating, that a restraining order is necessary to prevent [d]efendants from converting [p]laintiff's *clients' funds*," which was not sufficient to support irreparable-injury element).

(finding plaintiffs had not demonstrated irreparable injury to support a TRO, where money damages were "likely a sufficient remedy"); *Consol. Rest. Operations*, 2002 WL 1432469, at *6 ("There is abundant case law in this circuit and other federal courts that where money damages are adequate, there is no irreparable injury."). Plaintiffs have provided no evidence or argument, through either their papers or the hearing, explaining why money damages would not compensate them for lost sales or refunds they may be required to make due to the lack of certification. The devaluing of goods or loss of income during the pendency of a lawsuit is a claim for monetary injury. *Hunt v. Bankers Tr. Co.*, 646 F. Supp. 59, 64 (N.D. Tex. 1986); *Danden Petroleum, Inc. v. N. Nat. Gas Co.*, 615 F. Supp. 1093, 1099 (N.D. Tex. 1985). Similarly, a "disruption of [plaintiff's] business, loss of goodwill in the community, damage to relationships with existing customers, loss of standing in the community and industry, [or] loss of share of the [boar stud] market," fail to show irreparable injury. *Tex. Marine & Brokerage, Inc. v. Bennington Marine, LLC*, No. 1:12-CV-397, 2012 WL 12888827, at *5 (E.D. Tex. Oct. 17, 2012), *R. & R. adopted by* 2012 WL 12892168 (E.D. Tex. Nov. 9, 2012).

Plaintiffs' failure to demonstrate irreparable injury alone is sufficient basis to dissolve the TRO. *See Starrett v. Lockheed Martin Corp.*, No. 3:17-CV-0988-D, 2017 WL 11492766, at *2 (N.D. Tex. July 24, 2017) (quoting *Lee v. Verizon Commc'ns, Inc.*, No. 3:12–CV–4834–D, 2012 WL 6089041, at *6 (N.D. Tex. Dec. 7, 2012)). In this case, however, the undersigned also finds that Plaintiffs have failed to establish the third required element—that Plaintiffs' threatened injury outweighs any damage the injunction will cause to Defendants.

3. *Plaintiffs have not shown that the threatened injury outweighs any harm to Defendants.*

The third element requires a court to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks and citation

13

omitted). Defendants argue that "[t]he TRO rolls back a rule that has been in effect for nineteen years and forces the CWRA to recognize, register, and issue breeding certificates for a known stress carrier boar in direct contradiction to CWRA's" goals, rules, and bylaws. Defs.' Mot. 16. On the other hand, Plaintiffs maintain that dissolving the TRO will not cause any harm to Defendants because the Chester White breed is not free of the stress gene. Pls.' Resp. 9. Moreover, Plaintiffs claim the Defendants will financially benefit from the registrations and certificates. *Id.*

Plaintiffs may, as discussed above, suffer economic harm and damage to their business reputation if the Court dissolves the TRO. But Defendants have also persuasively shown that issuing certificates to stress-positive pigs is offensive to their stated goal of the Chester White breed "becom[ing] free of the porcine stress syndrome gene" (Defs.' Mot. 2) and, despite whatever issues may exist as to notice or procedure in relation to Plaintiffs, they have taken steps both corporately and publicly to publicize and enforce that restriction for the last twenty years. *See* ECF No. 7-2 (CWRA bylaws dated July 9, 2020); ECF No. 7-4 (Jan. 19, 2002, CWRA board meeting minutes); ECF No. 7-5 (CWRA magazine article); ECF No. 7-6 (same); ECF No. 7-7 (Aff. of John L. Wall, CWRA's interim chief executive officer); ECF No. 7-9 (Aff. of Ray Michou, CWRA president); ECF No. 7-10 (CWRA magazine article); ECF No. 7-11 (same); ECF No. 7-12 (June 30, 2004, CWRA board meeting minutes); ECF No. 7-14 (CWRA letter to members); ECF No. 7-20 (Sept. 13, 2020, CWRA board meeting ballot); ECF No. 7-21 (Sept. 13, 2020, CWRA board meeting minutes).

Plaintiffs have not adequately demonstrated that their purported harm outweighs, or is more significant than, the harm Defendants may suffer. At best, this factor is neutral, with both sides having shown potential harm through the continuance or dissolution of the TRO. The undersigned therefore finds Plaintiffs have failed to meet their burden as to this element. *See, e.g., Collins v.*

*Nat'l Football League*, No. 4:21-CV-792, 2021 WL 4743078, at *13 (E.D. Tex. Oct. 12, 2021) (declining to grant injunctive relief based in part on court's finding that the balancing of hardships neither "weigh[ed] for or against granting an injunction," where both parties advanced compelling arguments concerning harm); *Maria Eugenia Enters. Inc. v. Wells Fargo Bank, N.A.*, No. 3:19-CV-2729-BH, 2020 WL 10050711, at *5 (N.D. Tex. Mar. 1, 2020) ("Detriment to both sides does not suffice to meet [movant's] burden with respect to the third element of the preliminary injunction standard, and [movant] has failed to show that the balance of equities weighs in its favor."); *First Sec. Bank v. W & W Farms, Inc.*, No. 2:19-CV-91-Z, 2020 WL 570814, at *12 (N.D. Tex. Feb. 4, 2020) (holding that where defendant had not demonstrated it would suffer irreparable harm, "anything more than a *de minimis* harm to the [p]laintiff would preclude the [d]efendant from meeting its burden of proof on [the third] prong for purposes of" obtaining a TRO).

### IV. <u>Recommendation</u>

For these reasons, the undersigned **RECOMMENDS** that the United States District Judge deny Plaintiffs' Motion to Extend the TRO (ECF No. 6) and grant Defendants' Motion to Dissolve the state court TRO. ECF No. 7.

### V. <u>Right to Object</u>

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within **twenty-four hours** after being served with a copy. *See* ECF No. 9; *see also* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found.

An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: November 18, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE